_jjCIACCIO, Judge.
This is an appeal in the ongoing litigation between Metro Riverboat Associates, Inc. (“Metro”) and Bally’s Louisiana, Inc. (“BLI”) with regard to the operation of the Bally’s Casino in New Orleans. In the present case, Metro contends that BLI violated the Management Agreement pertaining to the casino by attempting to take control of the management responsibilities. Metro sought an injunction preventing BLI from acting as manager of the casino. A temporary restraining order was initially issued in this matter, and BLI subsequently filed exceptions of no right of action and lack of subject matter jurisdiction. The trial court granted BLI’s peremptory exceptions and denied Metro’s request for a preliminary injunction. Metro now appeals from the granting of the exceptions. For the reasons stated more fully herein, we affirm the judgment of the trial court. Facts and Procedural History
The entire factual background of this case has been thoroughly discussed by this court in Metro Riverboat Associates, Inc. v. Bally’s Louisiana, Inc., 97-1672 |2 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, writ denied 98-0679 (La.5/29/98), 720 So.2d 339, and will not be repeated herein.
The pertinent facts relative to the case before us are as follows:
In June of 1993, Metro and BLI formed Belle of Orleans, L.L.C., (hereinafter “Belle LLC”) a Louisiana limited liability company, for the purpose of owning and operating the Bally Casino in New Orleans. At the time the Belle LLC was formed, the sole shareholder of BLI was Bally’s Intermediate Casino Holding, Inc. (“BIC”). Further, the sole shareholder of BIC was Bally’s Casino Holdings, Inc. (“BCH”) and the parent company of these three Bally entities was Bally Manufacturing Corporation (“Bally Manufacturing”), which later changed its name to Bally Entertainment Corporation (“Bally Entertainment”). Bally Entertainment later merged into Hilton Hotels Corporation (“Hilton”), which was the ultimate parent company of BLI, BIC, and BCH at the time the present lawsuit was filed.
In August of 1993, the sole two members of the Belle LLC, namely Metro and BLI, entered into a comprehensive Operating Agreement of Belle of Orleans, L.L.C. which governs the management and operation of the Belle LLC. On the same date, the Belle LLC entered into a comprehensive Management Agreement with Bally’s Casino Holdings, Inc. (BCH), an affiliate of BLI, for the management of the Bally’s Casino. The Management Agreement was confected pursuant to the requirement in the operating agreement that the manager of the Bally’s Casino be an “affiliate” of Bally Manufacturing.
|3On June 22, 1994, BCH assigned its rights under the Management Agreement to BIC, a wholly-owned subsidiary of Bally Manufacturing. In January of 1995, BIC assigned its rights under the Management Agreement to BLI, also a wholly-owned subsidiary of Bally Manufacturing. By letter dated February 2, 1995, the Louisiana Riverboat Gaming Division was notified of the assignment of the management agreement to BLI. Bally’s Casino opened for business in July of 1995.
In 1998, Metro requested that the Louisiana Gaming Control Board investigate the assignments relating to the Management Agreement, and the Gaming Board began an administrative review of the allegations made by Metro. On November 23, 1998, Metro filed a Petition for Writ of Injunction and for Temporary Restraining Order in Civil District Court seeking to prevent BLI from acting as manager of the Bally’s Casino based on the alleged unlawful assignment of the management agreement.
The trial court initially granted a temporary restraining order, but on application for emergency review filed by BLI, this Court stayed the trial court’s order. On *124 December 3, 1998, this Court granted BLI’s writ application and remanded the matter to the trial court for an evidentiary-hearing on the merits of Metro’s petition for a preliminary injunction.
Prior to the evidentiary hearing, BLI filed several exceptions, including exceptions of no right of action and lack of subject matter jurisdiction. The evidentia-ry hearing was held and the exceptions were heard by the trial court on LDecember 3, 1999. By judgment dated December 23, 1999, the tidal court rendered judgment granting BLI’s exception of no right of action and exception of lack of subject matter jurisdiction. The court also denied Metro’s request for preliminary injunction and dismissed Metro’s suit in its entirety.
Metro now appeals, arguing two assignments of error. First, Metro contends that the trial court erred in granting BLI’s exception of lack of subject matter jurisdiction. Secondly, Metro argues that the trial court erred in granting the exception of no right of action.

Subject Matter Jurisdiction

The trial court held that it lacked subject matter jurisdiction to determine whether the assignments relating to the Management Agreement violated any gaming regulations as alleged by Metro. We agree with this determination.
Metro’s petition raises purely regulatory issues which are within the exclusive jurisdiction of the Louisiana Gaming Control Board pursuant to La. R.S. 27:15 B(l). This Court has previously indicated in this case that the Civil District Court lacked jurisdiction over the regulation of gaming activities. In Metro Riverboat Associates, Inc. v. Bally’s Louisiana, Inc., 98-2817 (La.App. 4 Cir. 12/3/98), this Court stated as follows:
The Louisiana Gaming Control Law provides that the Louisiana Gaming Control Board shall regulate all gaming activities and operations in the state. La. R.S. 27:15(A). The Law grants to the Board ‘all regulatory authority, control and jurisdiction’ over all aspects of gaming activities. La. R.S. 27:15(B). An appeal from any decision of the board shall be filed in the Nineteenth Judicial District Court. La. R.S. 27:26.
1 ^Therefore, the issue of whether the Management Agreement violated gaming rules or regulations rests exclusively within the jurisdiction of the Gaming Control Board. In fact, the record indicates that Metro filed an administrative complaint with the Gaming Board and that an administrative review was conducted in conjunction therewith. Metro’s remedy for these regulatory issues is therefore with the administrative agency.
Although Metro contends in brief that this is a breach of contract issue which falls under the jurisdiction of the trial court, we find no merit in this argument. Metro failed to allege this claim in its petition, and in fact, Metro is not a party to the Management Agreement and has no contractual rights. Further, Metro relies on provisions of the Management Agreement to support its argument that the assignment to BLI was invalid. Specifically, Metro cites to Section 19.4 of the Management Agreement which provides that the agreement is not assignable by any party without written consent of the other party and prior approval of the gaming commission. However, that section of the agreement also provides that the manager has the ability to assign its management rights to any affiliate of Bally Manufacturing without the consent of the members of the Belle LLC. There is no dispute that BLI is an affiliate of Bally Manufacturing. Further, there is nothing in the agreement to provide that BLI, as a member of the Belle LLC, is excluded from this provision of the agreement.
Thus, Metro’s argument that the assignment is invalid because no consent was obtained has no merit. On the showing made by appellant, we fail to find any merit in the argument that the Management Agreement in this case was *125 breached. Further, there is nothing in the record to support Metro’s claim of a constitutional taking of protected property rights (i.e., the state gambling license owned by Belle |fiof New Orleans, LLC) which would place this matter within the jurisdiction of the lower court.
For these reasons, we find no error of the trial court in granting the exception of lack of subject matter jurisdiction.

No Right of Action

The purpose of an exception of no right of action is to test whether a plaintiff has a real and actual interest in the action. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm’n, 94-2015 (La.11/30/94), 646 So.2d 885, 888.
In this case, Metro alleges that BLI breached the Management Agreement by acting as manager of the casino. However, as previously stated, Metro is not a party to the Management Agreement and thus has no contractual rights. Rather, the only parties to the Management Agreement are Belle LLC and BLI. Metro and the Belle LLC are separate legal entities. Metro thus has no real and actual interest in the action, nor any legal capacity to proceed with a suit for breach of contract against BLI. The proper party to claim breach of the management agreement in this case would be the Belle LLC. Although Metro is a member of the Belle LLC, the only recourse of Metro would be to bring a derivative action, which was not filed in this case. For these reasons, we find no error of the trial court in granting the exception of no right of action.

Conclusion

Accordingly, for the reasons assigned herein, the judgment of the trial court is affirmed. Metro Riverboats Associates, Inc. is to bear all costs of this appeal.

AFFIRMED.